519 P.2d 1175

Pedro Antonio ARCHULETA, Jr. and Jose
B. Archuleta, Plaintiffs-Appellees,

v.

Arturo PINA, Defendant-Appellant.

No. 9683.

Supreme Court of New Mexico.

March 8,. 1974.

Bachicha & Corlett, Larry N. Smith, Santa Fe, for defendant-appellant.

Kellahin & Fox, W. Thomas Kellahin, Santa Fe, for plaintiffs-appellees.

## OPINION

OMAN, Justice.

Plaintiffs brought a suit in ejectment for the purposes of gaining possession of certain real estate, hereinafter referred to as Tract 14, and recovering claimed damages. Defendant denied the essential allegations of the complaint, asserted several affirmative defenses and counterclaimed. The case was tried to a jury, but, at the close of all the evidence, the trial court directed a verdict for the plaintiffs upon both the complaint and counterclaim. A judgment was entered pursuant to this verdict whereby it was ordered that plaintiffs recover possession of Tract 14 and their costs of suit. Defendant has appealed from this judgment. We reverse.

█ In ruling on a motion for a directed verdict, the trial court must view the evidence, together with all reasonable inferences deducible therefrom, in the light most favorable to the party resisting the motion, and must disregard all conflicts in the evidence unfavorable to the position of that party. Simon v. Akin, 79 N.M. 689, 448 P.2d 795 (1968); Loucks v. Albuquerque National Bank, 76 N.M. 735, 418 P.2d 191 (1966); Tabet v. Sprouse-Reitz Co., 75 N.M. 645, 409 P.2d 497 (1966); Archuleta v. Johnston, 83 N.M. 380, 492 P.2d 997 (Ct.App.1971).

Insofar as prior decisions of this Court hold or suggest that the trial court's ruling on a motion for a directed verdict is discretionary [as in Romero v. Shelton, 70 N.M. 425, 374 P.2d 301 (1962) and Merrill v. Stringer, 58 N.M. 372, 271 P.2d 405 (1954)], those decisions are to that extent hereby overruled.

█ The appellate court, upon reviewing a judgment entered pursuant to a directed verdict, must also view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the party resisting the motion, and must disregard all conflicts in the evidence unfavorable to the position of that party. See McGuire v. Pearson, 78 N.M. 357, 431 P.2d 735 (1967); Burks v. Baumgartner, 72 N.M. 123, 381 P.2d 57 (1963); Bryan v. Phillips, 70 N.M. 1, 369 P.2d 37 (1962); Carter Farms Company v. Hoffman-Laroche, Inc., 83 N.M. 383, 492 P.2d 1000 (Ct.App.1971).

Insofar as prior decisions of this Court suggest a difference between the rule governing trial courts in passing on a motion for a directed verdict and the rule governing appellate courts in reviewing the validity of a judgment entered pursuant to a directed verdict [in this regard see the many cases cited in New Mexico Digest, 1852 to date, under Appeal and Error, ☞ Nos. 927(7), 989, 997(3) and Trial, ☞ Nos. 139(1), 142, 169, 170, 178], those decisions are to that extent hereby overruled.

In the present case, the evidence so viewed is as follows:

(1) Plaintiffs' grandfather, Pedro A. Archuleta I, obtained legal title to Tract 14 on September 4, 1897.

(2) Pedro A. Archuleta I died on May 10, 1920. On the same date he and Maria de Jusus Montano conveyed by warranty deed to Thomas D. Burns, Jr. a tract of land which included Tract 14, according to an abstractor called as an expert witness and whose testimony on this point was elicited by plaintiffs.

(3) On November 9, 1944, plaintiffs' paternal grandmother executed a deed conveying to her son, plaintiffs' father, a tract adjoining Tract 14. In this deed the lands which comprise Tract 14 were referred to as being owned by T. D. Burns, Jr.

(4) During the years 1939 and 1940 one Willis Cox continuously and openly occupied and farmed Tract 14 under a lease from T. D. Burns, Jr.

(5) In 1941 or 1942 defendant moved onto and had exclusive, open and continuous possession of Tract 14 until 1947 under a lease from T. D. Burns, Jr.

(6) In 1947 T. D. Burns, Jr. and defendant entered into a parol contract whereby Mr. Burns agreed to sell and defendant agreed to purchase Tract 14 for a stipulated price. Defendant paid Burns two-thirds of this contract price, but the remaining one-third has not been paid because Mr. Burns died and his heirs have failed to furnish defendant a deed to the property. The only written evidence of this contract was a receipt on a printed form and which reads:

"T. D. Burns, Jr., Tierra Amarilla and Park View, No. 4911—Tierra Amarilla, 4/14/47—RECEIVED FROM Arturo Pina Two thousand and 00/100 DOLLARS—Payment on Ranch—Papers to be furnished as soon as possible upon return of Mr. T. D. Burns.

$2000.00 owes balance $_____

     T. D. Burns, Jr.

   By  WHL    "

That portion of the present suit, by which defendant seeks to enforce the contract and secure a deed to the property from the Burns heirs, was severed for purposes of trial and is not before us on this appeal.

(7) By quitclaim deed dated July 6, 1948, Tract 14, along with other tracts, was purportedly conveyed by Ruth Willis Barton, Paul Brooks and Paul Brooks Willis to T. D. Burns, Jr.

(8) At all times from 1941 or 1942 until 1971, defendant had full, open and continuous possession in good faith of Tract 14 under and by reason of the lease and the parol contract to purchase the property from T. D. Burns, Jr.

(9) Taxes on Tract 14 were paid by T. D. Burns, Jr., or the representatives of his estate, from 1921 to 1970. He was supposed to pay taxes under the parol contract between him and defendant.

(10) In 1969, plaintiffs made a lump sum payment of taxes on the property for a ten year period.

(11) On April 20, 1971, plaintiffs secured a quitclaim deed to Tract 14 from their father and five of their father's brothers and sisters. They subsequently secured other quitclaim deeds to the property from other brothers and sisters of their father.

(12) On June 2, 1971, plaintiffs served notice upon defendant to vacate Tract 14. Defendant apparently did vacate a portion thereof, and plaintiffs conducted some farming operations thereon during the early summer of 1971. This suit was filed on August 10, 1971. On August 30, 1971, the trial court entered an order reciting in part that:

"* * * Defendant, ARTURO PINA, be and he hereby is awarded exclusive possession of the subject real property involved in the instant Cause from and after the entry of this Order, pending the determination of this litigation."

(13) The case, except for that portion thereof which was severed for trial as hereinabove noted, came on for trial on

October 24, 1972. The directed verdict was entered October 26, 1972. The judgment on this verdict was entered November 1, 1972.

The plaintiffs' claim of right to possession of Tract 14 was predicated upon: (1) their claim of legal title to the property, and (2) their claim of "title by adverse possession." In their answer brief, plaintiffs assert, and we agree, that the trial court ruled as a matter of law that plaintiffs had failed to establish the necessary possession of Tract 14 to support their claim to title by adverse possession. Plaintiffs have not cross-appealed, and the validity of this ruling by the trial court is not an issue in this appeal. Thus, plaintiffs' claim of title by adverse possession is no longer an issue in this suit.

It is also conceded by plaintiffs, and we agree, that the trial court's action in directing the verdict in favor of plaintiffs was predicated in part upon a determination by the trial court that defendant had failed, as a matter of law, to prove an essential element of his claim to title by adverse possession, to wit, color of title. The trial court reasoned that defendant has no color of title because color of title must be evidenced by a written instrument purporting to convey or pass title. Here the only writing, in any way concerned with the question of color of title in defendant himself, was the receipt above shown, and this receipt is insufficient to constitute color of title.

Defendant does not urge error on the part of the trial court in concluding that this receipt was insufficient to constitute color of title. His position is that he and those in privity with him clearly have been in adverse possession of the property at least since 1939 and have acquired title in fee simple thereto by adverse possession under § 23–1–22, N.M.S.A.1953, which provides in part:

"23–1–22. *Title in fee simple by adverse possession—Action after ten years barred—Definition—Payment of taxes.* —In all cases where any person or persons, their children, heirs or assigns, shall have had adverse possession continuously and in good faith under color of title for ten (10) years of any lands, tenements or hereditaments and no claim by suit in law or equity effectually prosecuted shall have been set up or made to the said lands, tenements or hereditaments, within the aforesaid time of ten (10) years, then and in that case, the person or persons, their children, heirs or assigns, so holding adverse possession as aforesaid, shall be entitled to keep and hold in possession such quantity of lands as shall be specified and described in some writing purporting to give color of title to such adverse occupant, in preference to all, and against all, and all manner of person or persons whatsoever; and any person or persons, their children or their heirs or assigns, who shall neglect or who have neglected for the said term of ten (10) years, to avail themselves of the benefit of any title, legal or equitable, which he, she or they may have to any lands, tenements or hereditaments, within this state, by suit of law or equity effectually prosecuted against the person or persons so as aforesaid in adverse possession, shall be forever barred, and the person or persons, their children, heirs or assigns so holding or keeping possession as aforesaid for the term of ten (10) years, shall have a good and indefeasible title in fee simple to such lands, tenements or hereditaments: * * *. 'Adverse possession' is defined to be an actual and visible appropriation of land, commenced and continued under a color of title and claim of right inconsistent with and hostile to the claim of another; * * * and Provided further in no case must 'adverse possession' be considered established within the meaning of the law, unless the party claiming adverse possession, his predecessors or grantors, have for the period mentioned in this section continuously paid all the

.taxes, state, county and municipal, which during that period have been assessed against the property."

See also our other adverse possession statute, § 23-1-21, N.M.S.A.1953. However, it appears that the parties in the present suit were proceeding under § 23-1-22, supra.

As shown by the summary of evidence recited above, T. D. Burns, Jr. and his lessees, Willis Cox and defendant, had actual, visible, and continuous possession of the property from 1939 to 1947. From 1947 to August 10, 1971, the date this suit was filed, defendant had actual, visible and continuous possession of the property, except for a portion thereof which he apparently yielded to plaintiffs upon their demand for a short time in 1971.

Taxes were paid by T. D. Burns, Jr., or his heirs, from 1921 through 1970. From 1947 through 1970 these taxes were paid for the benefit of defendant. The 1971 taxes were not due as of the date of the filing of this suit.

■ These payments of taxes by defendant's privies were sufficient to satisfy the requirement that taxes must be paid for a period of ten years by "the party claiming adverse possession, his predecessors or grantors" as provided in § 23-1-22, supra. Compare Burbridge v. Rosen, 240 Ark. 500, 400 S.W.2d 502 (1966); Williams v. Stillwell, 217 Cal. 487, 19 P.2d 773 (1933); Brown v. Clark, 89 Cal. 196, 26 P. 801 (1891); Kuhn v. Glos, 257 Ill. 289, 100 N.E. 1003 (1913); Cooper v. Carter Oil Company, 7 Utah 2d 9, 316 P.2d 320 (1957).

■ Either the deed of May 10, 1920 or the deed of July 6, 1948 was sufficient to establish color of title in T. D. Burns, Jr. These were clearly deeds purporting to convey an estate in fee simple and are clearly sufficient to constitute color of title under both §§ 23-1-21 and 23-1-22, supra. Marquez v. Padilla, 77 N.M. 620, 426 P.2d 593 (1967); Sandoval v. Perez, 26 N.M. 280, 191 P. 467 (1920).

■ It is true defendant · has shown no writing which purports to give or convey title to him personally. However, he properly presented evidence to show that he was in actual, visible and good faith possession of Tract 14 under a claim of right which was hostile to the claims of plaintiffs and their predecessors in title. This possession by defendant under a lease from T. D. Burns, Jr. until 1947, and thereafter, as the purchaser of the property from Mr. Burns under the parol agreement to purchase, was sufficient to establish color of title in him for adverse possession purposes, since he and Mr. Burns, or the representatives of the estate of Mr. Burns, were at all material times in privity. See H. B. Jones Coal Co. v. Mays, 225 Ky. 365, 8 S.W.2d 626 (1928); Vance v. Wood, 22 Or. 77, 29 P. 73 (1892); 4 Tiffany, Real Property, § 1146 (3d ed. 1939). As stated in Tiffany, at p. 434:

" * * * [I]t is said that successive possessions by different persons may be 'tacked,' so as to defeat the claim of the rightful owner, if such persons are in privity one with another, the expression 'privity' serving to indicate the relationship which exists between two or more persons, one of whom claims under the other or others, as representing the same persona or estate. This privity may be based upon contract, estate, or blood relationship, or upon any connecting relationship which will prevent a break in the adverse possessions and refer the several possessions to the original entry, and for this purpose no written transfer or agreement is necessary.

" * * * [B]y the very great weight of authority, one to whom another, having adverse possession of the land, voluntarily transfers the possession, can tack to his own possession the possession of the latter, even though the transfer of possession is accompanied merely by an oral agreement of transfer of title or by an invalid written conveyance. * * *"

It is stated in Stanaland v. Horne, 165 Ga. 685, 688, 142 S.E. 142, 145 (1928):

"* * * [W]here one purchases land from another who is in possession under written evidence of title, and pays the purchase money, and goes into possession thereof, claiming title to the land by virtue of such purchase, his possession can be tacked to that of his vendor, and he can rely upon his vendor's written evidence of title as color of title. * * *"

See also Ringstad v. Grannis, 171 F.2d 170 (9th Cir. 1948); H. B. Jones Coal Co. v. Mays, supra; Illinois Steel Co. v. Budzisz, 106 Wis. 499, 81 N.W. 1027 (1900).

█ We need not and cannot properly decide, as a matter of law under the evidence presented, whether plaintiffs, by reason of the doctrine of descent cast, as discussed in Madrid v. Borrego, 54 N.M. 276, 221 P.2d 1058 (1950), and the quitclaim deeds from their father and their aunts and uncles, established sufficient title in themselves to support their claim in ejectment. This question, like the question of title by adverse possession in defendant, is one of fact under the evidence in the record before us.

█ Defendant also urges that the trial court abused its discretion in not granting his motion to dismiss on the ground of plaintiffs' laches. Laches is a question primarily addressed to the sound discretion of the trial court. Hart v. Northeastern N.M. Fair Ass'n., 58 N.M. 9, 265 P.2d 341 (1954); Potash Co. of America v. International Min. & C. Corp., 213 F.2d 153 (10th Cir. 1954). We are unwilling under the evidence before us to hold that the trial court abused its discretion in denying defendant's motion.

The judgment of the trial court should be reversed and the case remanded for a new trial consistent with the views herein expressed.

It is so ordered.

McMANUS, C. J., and STEPHENSON, J., concur.