532 P.2d 579

**Philip N. FIDEL and Jessie M. Fidel, his wife, Plaintiffs-Appellants,**

v.

**John N. FIDEL and Jeannette Fidel, his wife, Toufick Fidel and Clara Fidel, his wife, Defendants-Appellees.**

No. 9987.

Supreme Court of New Mexico.

Feb. 28, 1975.

Gallagher & Ruud, John Hogan Stewart, Albuquerque, for appellants.

James E. Womack, Johnson, Paulantis & Lanphere, James T. Paulantis, Thomas J. McBride, Albuquerque, for appellees.

OPINION

OMAN, Justice.

The plaintiff, Philip Fidel, as a claimed beneficiary of an express trust, sought an accounting from his brothers, John Fidel and Toufick Fidel, as trustees of this claimed trust. The wives were joined in the suit as parties with possible interests therein.

After trial upon the merits, the district court entered judgment dismissing the action with prejudice. This dismissal was predicated upon the conclusion that any cause of action which plaintiffs might have had is now barred both by the applicable statute of limitations and by laches. Plaintiffs have appealed. We affirm.

The facts essential to an understanding of this case are:

1. John, Toufick and Joe, a now deceased brother, as a partnership, operated the El Fidel Hotel in Santa Fe for many years.

2. On June 8, 1954, Philip, acting for himself and ostensibly on behalf of the Fidel brothers partnership, entered into an option agreement to purchase a tract of real property adjacent to the hotel property. The improvements on this adjoining tract, hereinafter called the Candelario property, consisted of a motel.

3. An instrument dated May 17, 1955, in the form of a letter addressed to Joe and Philip and signed by Toufick and John, recited:

"In consideration of the deed to the property contracted to be sold by John S. Candelario being issued to the undersigned, instead of to all four of the Fidel

brothers, the undersigned hereby agree that they hold and will continue to hold title to that property in trust under the following conditions:

"The total so far paid upon the purchase price of said property is $46,414.56 of which $43,851.57 represents payment on principal of the purchase price and $2562.99 is interest. This total sum of $46,414.56 has been paid by the respective Fidel Brothers in the following amounts:

| | |
|---|---|
| Joe W. Fidel | $7,138.19 |
| Philip N. Fidel | 3,569.09 |
| John Fidel | 19,638.19 |
| Toufick Fidel | 16,069.09 |
| | $46,414.56 |

"The undersigned agree that they will promptly pay to Mr. Candelario sufficient additional monies to complete the purchase of the property with the undersigned assuming the balance of the outstanding mortgage to Amicable Life Insurance Company and to W. E. Scorah.

"The undersigned further agree that upon Joe Fidel paying in sufficient additional monies so that the aggregate of his payments equals one-fourth of the purchase price, including interest thereon, of the above property, the undersigned will convey to Joe Fidel an undivided one-fourth interest in the property, and upon Philip Fidel paying in sufficient additional monies so that the total of his payments equals one-fourth of the purchase price, including interest, the undersigned will convey an undivided one-fourth interest in the property to Philip Fidel.

"The undersigned further agree that if the property be sold at a profit prior to the conveyance of the above interests to Joe Fidel and/or Philip Fidel, they will pay to Joe Fidel one-fourth of such profit and to Philip Fidel one-fourth of such profit, and that during the time they hold and operate the properties they will credit Joe Fidel with one-fourth of any operating profit obtained and Philip Fidel with one-fourth of any operating profit obtained. Prior to making conveyance to Joe and/or Philip Fidel, the undersigned shall have complete authority to operate, sell or mortgage the above property for the benefit of themselves and all other interested persons as in their judgment they deem proper."

This is the instrument under which Philip made a claim to an accounting.

4. On June 7, 1955, the owners of the Candelario property conveyed the same by warranty deed to John and Toufick.

5. Philip made no further payments on the purchase price of the Candelario property and did not, at any time, become entitled to a conveyance of a one-fourth interest therein under the provisions of the agreement contained in the letter.

6. From some time prior to June 7, 1955, until approximately 1958, Philip, assisted by Michel Fidel, a son of Joe, managed both the hotel and the motel. Thereafter, Philip did not participate in the management of either property, and the management was taken over by Michel. Some time between 1958 and 1963, the motel was razed and removed from the Candelario property.

7. On about January 2, 1963, John sold and conveyed all of his right, title and interest in both the hotel property and the Candelario property to Michel and his wife. To secure a balance of the unpaid purchase price, Michel, his wife and his mother (widow and successor in interest of Joe) executed a mortgage in favor of John on all their interest in both the hotel and Candelario properties. The deed and mortgage were placed of record in Santa Fe County on February 24, 1964.

8. On about March 5, 1964, Toufick conveyed all of his right, title and interest in both the hotel and Candelario properties to Michel and his wife. Michel, his wife and his mother executed a mortgage in favor of Toufick covering the properties to secure an unpaid balance of the purchase price owing to him. This deed and mortgage were recorded on April 27, 1964.

9. These sales by John and Toufick of the Candelario property to Michel and his wife were not at a profit, and plaintiff was not entitled to any of the proceeds from the sales under the provisions of the agreement contained in the letter.

10. The above stated mortgages to John and Toufick covering both the hotel and Candelario properties were later effectively subordinated to mortgages covering both properties given to secure principal amounts totaling $200,000 owing by Michel, his wife and his mother to the Mutual Building & Loan Association in Santa Fe.

11. Mutual Building & Loan Association foreclosed its mortgage liens, and John bid the properties in at the foreclosure sale.

12. Later the Candelario property was condemned by the City of Santa Fe, acting through the Santa Fe Urban Renewal Agency, in proceedings initiated on May 16, 1968. Although Philip was not named as a party defendant in these proceedings by the City, he obviously was aware of them, since he was served on July 19, 1968, with a third party summons and third party complaint filed therein against him and his wife by John. He made no claim to any interest in the property or in the award of compensation for the taking thereof. Judgment for the award was entered in favor of John, and the amount of the award was paid to and received by him.

13. Plaintiffs filed their complaint in the present case on May 11, 1972.

The foregoing recited facts are in large part undisputed and consistent with the district court's findings which are either unattacked or improperly attacked. The remainder thereof come from findings of the district court, which are clearly supported by substantial evidence, and from the district court records in the aforesaid foreclosure and condemnation suits, which are before us as a part of the record on this appeal.

 Whether there was or was not a trust created by the letter agreement, this is the instrument which controls the rights and obligations of John, Toufick and Philip in relation to each other, insofar as the Candelario property is concerned. We agree with the district court that if Philip had a cause of action under this agreement against either John or Toufick, or both, this cause arose at the time of the sale or sales of the property to Michel and his wife. This sale, or these sales, were fully consummated no later than April 27, 1964, the date of recording of the deed executed by Toufick. Title and possession of the property had clearly passed to Michel and his wife. At that time, if not before, any right Philip might have had to an accounting came into existence.

The applicable statutes of limitation which appear as §§ 23–1–1, 23–1–3 & 23–1–18, N.M.S.A.1953, provide:

"*23–1–1. Limitation on time of bringing actions.*—The following suits or actions may be brought within the time hereinafter limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially provided."

"*23–1–3. Notes—Written instruments —Judgments of courts not of record— Six-year limitation—Computation of period.*—Those founded upon any bond, promissory note, bill of exchange or other contract in writing, or upon any judgment of any court not of record, within six [6] years."

"*23–1–18. Limitations do not run against trust actions fraudulently concealed.*—None of the provisions of this chapter shall run against causes of actions originating in or arising out of trusts, when the defendant has fraudulently concealed the cause of action, or the existence thereof from the party entitled or having the right thereto."

There is no evidence of any fraudulent concealment by either John or Toufick. Thus, the six-year period of limitation began to run no later than April 27, 1964, and, as above stated, Philip did not file his suit until May 11, 1972.

Although Philip suggests that these statutes of limitation may not apply because a trust is involved, a reading of the statutes, and particularly of § 23–1–18, supra, clearly shows their applicability. See Reagan v. Brown, 59 N.M. 423, 285 P.2d 789 (1955).

Since we are of the opinion that any cause of action Philip may have had is barred by the six-year period of limitations, we need not discuss the matter of laches. We have considered Philip's contentions that his cause of action arose at a later date, but find them to be without merit.

The judgment should be affirmed.

It is so ordered.

McMANUS, C. J., and MARTINEZ, J., concur.