830 P.2d 569

In the Matter of the ESTATE of
Joseph S. GAINES, Deceased.

Joseph Casey GAINES, Petitioner–
Appellant,

v.

Joseph Blair GAINES, Respondent–
Appellee.

No. 12560.

Court of Appeals of New Mexico.

March 5, 1992.

Dean E. Border, Border Law Office, Tucumcari, for petitioner-appellant.

Terrence R. Kamm, John William Clever, Kastler and Kamm, Raton, for respondent-appellee.

## OPINION

BLACK, Judge.

Joseph Casey Gaines appeals from the trial court's denial of his Rule 60(B) motion for relief from a judgment that the will of Joseph S. Gaines was invalid. SCRA 1986, 1–060(B) (Rule 60(B)). We uphold the trial court.

*FACTS*

Joseph S. Gaines died on November 22, 1983. He was killed by his alleged wife, Cecilia Duran. Joseph S. Gaines was survived by Cecilia Duran; their adult son, Joseph Casey Gaines ("Casey"); and his adult children from a prior marriage, Joseph Blair Gaines ("Joe") and Julie Blair.

An application for informal appointment was filed by Joe in the Probate Court of Colfax County, New Mexico, on December 6, 1983. On the same day, the probate judge signed an order appointing Joe as administrator of the estate. On January 12, 1984, the probate judge transferred the probate cause to the Colfax County District Court, where it was captioned Estate of Joseph S. Gaines, Deceased, Probate No. 84–3–PB.

On January 26, 1984, Joe filed a petition for formal testacy ("first petition"). In the first petition, Joe alleged that Cecilia Duran claimed to hold a will executed by Joseph S. Gaines but stated, "[p]etitioner believes the decedent either destroyed or intended to destroy the original of said will prior to his death." He prayed the district court to "find and order that the decedent left no unrevoked, valid will."

On January 27, 1984, Joe's attorney certified that he sent a copy of the first petition to Casey, who does not deny receiving this petition. On February 1, 1984, Joe filed an amended petition ("amended petition") in which he requested, among other things, a specific determination that any purported will be declared invalid. The amended petition was never served on Casey.

On February 16, 1984, Cecilia Duran filed a petition seeking formal probate of decedent's will and requesting appointment as personal representative ("mother's petition"). Casey filed an acceptance of service of his mother's petition. On November 30, 1984, Casey, along with his mother Cecilia Duran, executed a joint retainer agreement employing Stephen M. Peterson to represent them in the pending probate matters.

Casey was deposed on May 10, 1989, and was subpoenaed to testify at the trial on the merits, which was scheduled for October 24, 1989. That setting was vacated. Casey was again subpoenaed and testified at the trial commencing March 19, 1990.

After hearing all the evidence, including Casey's testimony, the jury determined that: (1) the last will and testament of Joseph S. Gaines was not validly executed; and (2) Cecilia Duran feloniously and intentionally killed Joseph S. Gaines. The trial court entered judgment on the verdict on March 29, 1990. On May 16, 1990, Casey filed a motion for relief from judgment under Rule 60(B). The trial court denied this motion.

*ISSUES*

Casey argues that: (1) he did not receive the notice required by NMSA 1978, Section 45–3–412 (Repl.Pamp.1989), and due process; (2) the trial court lacked jurisdiction to adjudicate the validity of the will in his absence because he was an indispensable party; (3) the trial court erred in applying the doctrine of laches; and (4) the trial court's denial of the relief requested under Rule 60(B) is not supported by substantial evidence.

*NOTICE UNDER SECTION 45–3–412(A)(1)*

■ Casey maintains that the judgment should be set aside because Joe did not comply with statutory and constitutional notice requirements. Section 45–3–412(A)(1) reads:

A. Subject to appeal and subject to vacation as provided in this section and in Section 3–413 [45–3–413 NMSA 1978], a formal testacy order under Sections 3–409 through 3–411 [45–3–409 to 45–3–411 NMSA 1978], including an order that the decedent left no valid will and determining heirs, is final as to all persons with respect to all issues concerning the decedent's estate that the court considered or might have considered incident to its rendition relevant to the question of whether the decedent left a valid will, and to the determination of heirs, except that:

(1) the court shall entertain a petition for modification or vacation of its order and probate of another will of the decedent *if it is shown that the proponents of the later-offered will* were unaware of its existence at the time of the earlier proceeding or *were unaware of the earlier proceeding and were given no notice thereof, except by publication* * * *. [Emphasis added.]

First, we note that Section 45–3–412(A)(1) places the burden upon the party challenging the validity of the court's final order. *See Mathieson v. Hubler,* 92 N.M. 381, 387, 588 P.2d 1056, 1062 (Ct.App.), *cert. denied,* 92 N.M. 353, 588 P.2d 554 (1978); *cf.* NMSA 1978, § 45–3–407 (Repl.Pamp.1989) (burden of proof in contested cases).

Second, the purpose of Section 45–3–412(A)(1) is to allow the trial court to consider a will that was not tendered before a formal testacy order was entered. In the present case Casey has no new will to offer, but merely wants a chance to advance the same will offered by his mother, a will that was already considered by a jury and found invalid.

Even if Section 45–3–412(A)(1) can be invoked by one promoting a will which has previously been rejected, Casey cannot satisfy its requirements. Casey contends that he was "unaware of the earlier proceeding and [was] given no notice thereof." § 45–3–412(A)(1). The facts refute this. It is undisputed that Casey received the first petition by certified mail. This petition for formal testacy, filed by Joe on January 26, 1984, alleged that the decedent intended to destroy the will held by Cecilia Duran and requested a finding that the decedent left no valid, unrevoked will. It is also undisputed that Casey received the petition filed by his mother, Cecilia Duran. The record also contains unrebutted evidence that Casey and his mother retained counsel, Stephen M. Peterson, to represent them in the probate proceeding initiated by his stepbrother, Joe. The retainer agreement, executed by both Casey and Cecilia Duran, specifically provides:

We, Cecelia Duran Gaines and Joe Casey Gaines, retain the Law Offices of Stephen M. Peterson, (herein referred to as "PETERSON") as our Lawyer in all cases involving the recovery of the assets of the Estate of Joseph S. Gaines, Deceased, which cases are presently pending in the District Court of New Mexico in Colfax County, New Mexico, and being entitled the Estate of Joseph S. Gaines, Deceased, Probate No. 84–3 PB and all claims arising against Joseph Blair Gaines, both personally and as Personal Representative of the Estate of Joseph S. Gaines, Deceased, and any claims otherwise arising directly or indirectly therefrom, including but not limited to, the recovery of any Insurance Claims.

Casey testified during discovery and at trial, and his lawyer, representing both Casey and his mother, was involved at every phase of the proceeding. Casey makes no claim his counsel did not receive all pleadings and notice of all hearings.

■ Casey's argument not only ignores this evidence, but misapprehends the purpose of notice in probate proceedings. Casey argues that his notice was inadequate because it did not inform him of all issues and contentions involved in the will contest between his mother and stepbrother. Ini-

tially, we note that Section 45–3–412(A)(1) allows a petition to vacate an order of probate and offer a new will if petitioner was "unaware of the earlier proceeding *and* [was] given no notice thereof, except by publication." (emphasis added). The Probate Code does not require that a non-party be notified of every hearing in a proceeding. *See In re Protective Proceeding for Strozzi*, 112 N.M. 270, 814 P.2d 138 (Ct.App.1991). Nor is notice inadequate because it does not keep him informed of the development of subsequent issues which differ from the relief initially requested. *See id.* (notice was adequate where grand-nephew received original petition for guardianship and conservatorship, but was not informed of later court order creating limited power of attorney). Notice is only required to " 'apprise him of the litigation and his rights to participate in it.' " *Id.* at 274, 814 P.2d at 142 (quoting 53 A.L.I.Proc. 303 (1976)).

Casey received Joe's first petition, which specifically challenged any will possessed by Cecilia Duran. He also accepted service of his mother's petition seeking admission of the very will from which his alleged rights derived. He was thus apprised "of the litigation and his rights to participate in it," and indeed, he retained an attorney to do just that. Clearly Casey cannot maintain he was "unaware of the earlier proceeding." Moreover, his contention that notice must comprehensively inform the recipient of the specific claims at issue has been directly rejected. In *Kortz v. American Nat'l Bank*, 571 P.2d 985 (Wyo.1977), the contestant argued that the three-month Wyoming limitation for challenging a will should not apply where someone had allegedly substituted a page in the original filed will and this was ascertainable only upon examination of the actual court file. The challenge was rejected by the trial court as untimely. The Wyoming Supreme Court affirmed.

This aspect of *Kortz* was considered by John A. Warnick in *The Ungrateful Living: An Estate Planner's Nightmare—The Trial Attorney's Dream*, 24 Land & Water L.Rev. 401 (1989). Like the Wyoming Supreme Court, Warnick rejects the contention that potential claimants must be given notice of more than the bare fact that a will has been submitted for probate:

> Presumably once they have been notified it is up to each creditor to take whatever steps, including making an investigation of the probate court file, to protect its interests. There seems to be no policy reason to require that the will be sent to the heirs along with the notice of probate. Once they have received notification each heir must take steps to protect his interest and those steps would include an investigation of the probate court's file.

Warnick, *supra*, at 431; *see DiMauro v. Pavia*, 492 F.Supp. 1051 (D.Conn.1979).

Requiring a contestant to protect his own interests is especially appropriate where, as in the instant case, he is aware of probate proceedings lasting a protracted period. Debra A. Falender, *Notice to Creditors in Estate Proceedings: What Process Is Due?*, 63 N.C.L.Rev. 659, 676–77 (1985); *cf. Jordan v. Dobrowski*, 22 Mass.App.Ct. 996, 498 N.E.2d 409 (1986) (cousins who had actual notice of decedent's death before will was allowed but took no action for over two years not allowed to vacate final account).

In any event, the Probate Court eliminates any requirement of notice at the point of the three-year statute of limitations on any claim under a will. *Compare* NMSA 1978, § 45–3–108 (Repl.Pamp.1989) *with* § 45–3–412(A)(3)(b). In this case Casey did not make his claim until more than six years after he received notice that the will under which he claimed had been tendered to the district court.

Nor are we persuaded by Casey's reliance on *In re Estate of Holmes*, 183 Mont. 290, 599 P.2d 344 (1979). In that case decedent had expressly disinherited his two adult sons and devised all his property to the Shriners Crippled Children's Home. The personal representative petitioned for formal probate. *Id.* at 345. At the hearing one of decedent's sons objected to the will. *Id.* Although the Shriners were given notice of the hearing, they did

not appear and were not thereafter given notice of the objection. *Id.* The court clerk then failed to comply with Montana's rule of procedure requiring him to give notice to the Shriners of the district court decision, which held two-thirds of the devise void under Montana's Mortmain Statute. *Id.* at 345–47. The Montana Supreme Court held that the Shriners were not barred because they had not received proper notice from the court clerk. *Id.* at 347. Unlike the Shriners in that case, Casey had notice of an objection to the tendered will, and New Mexico has no procedural rule comparable to that relied upon by the Montana Supreme Court in *In re Estate of Holmes.*

## DUE PROCESS

■ Casey next argues that, if the Probate Code does not require that he receive notification of his rights and duties in the pending litigation, it violates due process. Relying upon the Fourteenth Amendment, U.S. Const. amend. XIV, he argues that he has not been afforded minimal due process, because neither of the two petitions he received informed him to respond, gave him notice of a hearing, or made evident to him his specific rights in the matter.

Once again we believe Casey advances well-established legal and constitutional principles which do not apply to the present facts. We agree that due process requires reasonable notice. *See In re Estate of Engbrock,* 90 N.M. 492, 565 P.2d 662 (1977). What notice is constitutionally "due," however, depends upon the type of proceeding, the rights involved, and the length of time given to respond. *Falender, supra,* at 691–97.

Casey argues that, since he was never served with his stepbrother's amended petition specifically challenging the validity of the will from which Casey's claim derived, he was deprived of the opportunity to be heard on that issue. Even if he had not testified by deposition and at trial, and assuming that he did not learn of the issues from his lawyer or his mother, we could not accept this argument. Once Casey received the first petition in which his stepbrother challenged the continued validi-

ty of his mother's will, he had received sufficient notice of the issues to satisfy the requirements of due process. *See National Council on Compensation Ins. v. New Mexico State Corp. Comm'n,* 107 N.M. 278, 283–84, 756 P.2d 558, 563–64 (1988) (would-be participant need only have notice of the hearing, not each issue that may be considered).

The court rejected a due process challenge in a similar situation in *DiMauro v. Pavia,* 492 F.Supp. 1051 (D.Conn.1979). The decedent's widow therein received notice of a New York hearing on a final accounting and judicial settlement of the estate. The widow's Connecticut attorney was present at the hearing but did not enter an appearance, and the hearing was vacated to allow the widow to retain New York counsel. *Id.* at 1057. Instead, the Connecticut attorney decided the better strategy was to file suit in Connecticut, challenging the administrator's conduct. *Id.* at 1057–58. Without further notice or proceedings, the New York court then entered a final decree which was upheld on appeal. The federal district court in Connecticut held that the widow had sufficient notice of the prior New York proceeding to comply with due process. *Id.* at 1060–61. The court's observations regarding both the requirements of due process and the "unofficial" appearance of Connecticut counsel are relevant in the present case:

DiMauro argues that even if the Surrogate's Court proceeding was properly undertaken, she cannot be bound by the final decree if she failed to receive notice and to appear. By her own admission and by recital of the decree of the Surrogate's Court, however, DiMauro did receive notice of the hearing scheduled for the purpose of closing the administrator's account. Her Connecticut counsel came to the court at the scheduled time, though he did not enter an appearance. The notice was constitutionally adequate to accord DiMauro an opportunity to appear and be heard in the orderly process of the determination of the interests of all claimants, resident and nonresident, in the estate of her husband. *See Mullane v. Central Hanover Bank & Trust*

*Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950).

*Id.* at 1060–61.

We conclude that Casey received sufficient notice to comply with the requirements of due process.

*INDISPENSABLE PARTY*

■ Casey also contends that he was an indispensable party under SCRA 1986, 1–019 (Rule 19), and the trial court therefore lacked jurisdiction to enter judgment in his absence. While this argument has superficial appeal, it does not fit the facts of this case.

The Uniform Probate Code makes the Rules of Civil Procedure applicable "[u]nless specifically provided to the contrary in the Probate Code, or unless inconsistent with its provisions." NMSA 1978, § 45–1–304 (Repl.Pamp.1989). The specific issue, then, is whether the concept of indispensable parties is consistent with the Uniform Probate Code provisions on "interested" parties. *See* NMSA 1978, § 45–1–201(A)(19) (Repl.Pamp.1989).

It is less than clear that the concept of "indispensable parties" under Rule 19 fits within the framework of the Probate Code. Where, as here, the would-be devisee seeks to reopen the probate proceedings, the language of Section 45–3–412(A), for example, provides a different procedure than Rule 19. Probate proceedings grew out of equity practice, where strict pleading requirements did not apply. James M. Henderson, 1 *Bancroft's Probate Practice* §§ 39, 65 (2d ed. 1950). Probate proceedings, then, must be seen as distinct from general civil litigation and joinder provisions may be inconsistent. *Id.* § 38. Courts in other jurisdictions have split on whether the treatment of interested parties under the Probate Code is consistent with the mandate of rules of civil procedure regarding party participation. *Compare In re Estate of Van Dyke*, 54 Wash.App. 225, 772 P.2d 1049 (1989) (Probate Code provision requiring notice to legatees is not inconsistent with necessary party provisions of Rule 19) *with In re Estate of Davis*, 219 Cal.App.3d 663, 268 Cal.Rptr. 384 (1990) (Probate Code definition of interested person provided al-

ternative contrary to California civil procedure intervention provisions).

New Mexico has not decided the applicability of the Rule 19 concept of indispensable parties under the Uniform Probate Code. Nor is our earlier law necessarily dispositive. Although probate proceedings have been recognized as in rem proceedings in which there are no "parties" per se, *In re Towndrow's Will*, 47 N.M. 173, 181, 138 P.2d 1001, 1005–06 (1943), the concept of indispensable parties has also been applied in probate proceedings. *See C. de Baca v. Baca*, 73 N.M. 387, 388 P.2d 392 (1964) (sole beneficiary was indispensable party).

Even assuming that Rule 19 is applicable in probate proceedings, however, the determination of indispensable parties must be made in context. *See State ex rel. Blanchard v. City Comm'rs*, 106 N.M. 769, 770, 750 P.2d 469, 470 (Ct.App.1988). "Because the doctrine of indispensability is equitable in character, the court will not dismiss for nonjoinder when special circumstances would make it inequitable to do so." Charles A. Wright et al., 7 *Federal Practice and Procedure* § 1611, at 175 (2d ed. 1986). Even when a contingent beneficiary can be considered indispensable, in order to reopen a judgment he must also prove that his joinder would not be useless. *Travelers Ins. Co. v. Young*, 580 F.Supp. 421, 425 (E.D.Mich.1984). We do not think Casey can meet this requirement. Casey objects to not being heard on the validity of the will under which he was a contingent beneficiary. While this might be a valid claim in some contexts, it cannot be so here where the same will was defended by his mother through the same attorney who represented Casey's interest in the same proceeding. After six years of preparation and a full trial, at which Casey testified, the will was found invalid. Casey has failed to make any showing that his participation in the proceedings in a different role would have persuaded the jury that the will was validly executed.

Finally, the timing of Casey's motion regarding his indispensable status is a factor to be considered. *See C.E. Alexander &*

*Sons v. DEC Int'l*, 112 N.M. 89, 811 P.2d 899 (1991). Once the trial in a probate proceeding has been concluded, pragmatic considerations of the compulsory joinder rule weigh heavily in favor of preserving the judgment of the trial court. *Id.; see also Cudworth v. Cudworth*, 312 N.W.2d 331, 334 (N.D.1981). Waiting six years after he was aware the will had been tendered for probate would also drop the bar of laches across Casey's Rule 19 claim of indispensability. *Cf. National Bd. of Y.W.C.A. v. Y.W.C.A. of Charleston*, 335 F.Supp. 615, 627 (D.S.C.1971); *Benger Labs. Ltd. v. R.K. Laros Co.*, 24 F.R.D. 450 (E.D.Pa.1959).

*LACHES*

The trial court also held that Casey's claim should be denied under the equitable doctrine of laches. While the decision to apply laches is within the sound discretion of the trial court, *Archuleta v. Pina*, 86 N.M. 94, 99, 519 P.2d 1175, 1180 (1974), we do not think it is necessary here. As noted earlier, the statute of limitations under the Probate Code is three years. *See* § 45-3-108. If the statute of limitations has run, the court need not consider laches. *Fidel v. Fidel*, 87 N.M. 283, 286, 532 P.2d 579, 582 (1975).

*RULE 60(B)(4)*

Casey's final argument is that the district court's refusal to grant relief pursuant to Rule 60(B) is not supported by substantial evidence. Casey had the burden of proof under Rule 60(B). To the extent that there was inadequate evidence to make a fact-finding on an essential factual question, therefore, Casey bears the risk of non-persuasion. In any event, the evidence recited in our prior discussion of the issues raised by Casey suffices to support the trial court's rulings.

For the reasons stated above, we do not feel that the trial court erred in refusing to find that the judgment entered on the jury verdict was void. A person, especially one represented by counsel, who has participated in a case can be assumed to be aware of developments in the proceedings. *See Maples v. State*, 110 N.M. 34, 791 P.2d 788 (1990); *Chavez v. Village of Cimarron*, 65 N.M. 141, 333 P.2d 882 (1958). A person who is represented by counsel and participated in proceedings is estopped, as a matter of law, from seeking relief under Rule 60(B) based on lack of knowledge of the details of the litigation. *In re Four Seasons Secs. Laws Litig.*, 525 F.2d 500 (10th Cir.1975). Nor may a party, served with an initial summons and thus having actual notice of the litigation, claim "excusable neglect" under Rule 60(B) for not being aware of subsequent proceedings in the matter. *FDIC v. Spartan Mining Co.*, 96 F.R.D. 677, 682–83 (S.D.W.Va.1983), *aff'd sub nom. FDIC v. Schaffer*, 731 F.2d 1134 (4th Cir.1984). Conversely, it is not an abuse of discretion under Rule 60(B) to deny relief when the party is actually aware of the proceedings, even if his attorney is not. *See Standard Newspapers, Inc. v. King*, 375 F.2d 115 (2d Cir.1967).

*CONCLUSION*

The judgment which Casey challenges is not void for lack of jurisdiction. The trial court did not abuse its discretion in refusing relief under Rule 60(B).

The order of the district court denying relief under Rule 60(B) is affirmed.

IT IS SO ORDERED.

BIVINS, J., concurs.

HARTZ, Judge (Specially Concurring).

I concur in the result and join in Judge Black's opinion except for the discussions of "Indispensable Party" and "Rule 60(B)(4)."

The Probate Code states that it prevails over any inconsistent provision in the Rules of Civil Procedure. NMSA 1978, § 45-1-304 (Repl.Pamp.1989). The determination of whether the Probate Code prevails over a rule must be made on a case-by-case basis; some aspects of a rule may apply while others do not. *See Mathieson v. Hubler*, 92 N.M. 381, 389, 588 P.2d 1056, 1064 (Ct.App.1978). The Probate Code specifically addresses and rejects the sub-

stance of Casey's arguments for relief under SCRA 1986, 1–019 and 1–060(B). Therefore, we need not consider whether he would be entitled to relief under Rules 1–019 or 1–060(B), because to grant relief under either rule would conflict with the Probate Code.