[No. G006505. Fourth Dist., Div. Three. Apr. 12, 1990.]

Estate of JOHN CAMERON DAVIS, Deceased.
MARILYN DAVIS, as Administratrix, etc., Petitioner and
Respondent, v.
TORD NORBERG et al., Objectors and Appellants;
HIGHLANDS INSURANCE COMPANY, Real Party in Interest and
Respondent.

COUNSEL

Jeffrey W. Virden for Objectors and Appellants.

Williams & Martinet, Leonard J. Martinet and Jill Jacobi for Real Party in Interest and Respondent.

No Appearance for Petitioner and Respondent.

OPINION

**SONENSHINE, J.**—We here decide whether a probate administrator's surety may participate in a probate proceeding as an interested person (Prob. Code, § 48)[1] but without intervening (Code Civ. Proc., § 387). We conclude it may.

I.

John and Marilyn Davis owned Hedberg Manufacturing Company, which produced Clean Power, a fuel detergent. In November 1980, Hed-

---

[1] All statutory references are to the Probate Code unless otherwise specified.

berg entered into an exclusive distributorship contract with Tord Norberg's company, Tegenor. When John died, Marilyn was appointed administrator and special administrator with powers to continue to run Hedberg.

At the time of John's death, 90 percent of Clean Power was being distributed by Tegenor. The relationship soon deteriorated; Marilyn terminated the contract, and Norberg filed a $1,756,505 creditor's claim, which Marilyn rejected.

Norberg responded by filing 18 objections to Marilyn's final account and petition for final distribution.[2] At the same time, he requested she be personally surcharged for the estate's insolvency. He alleged she had breached her duty of care as estate administrator through negligence and mismanagement. The trial court disagreed and approved the final accounting.[3] Norberg appeals.

## II.

At the trial's outset, Norberg objected to participation by Marilyn's surety.[4] However, the trial court determined the surety was an interested person entitled to appear. (§ 48.)[5] ■ Norberg maintains Code of Civil Procedure section 387,[6] which requires a motion to intervene by nonparties who

---

[2] Norberg also filed suit in the federal district court, resulting in a $419,850 default judgment.

[3] Marilyn was surcharged $11,945.81. This included $7,545.81 for lost profits to Clean Power, and $4,400 for the difference between the amount Marilyn paid to set up a new corporation and the amount the court determined was reasonable.

[4] The surety argues Norberg waived his right to object by failing to do so earlier, e.g., when the surety appeared at a hearing on the underlying action, at a mandatory settlement conference, or when it requested a continuance. We agree with Norberg's position that none of the appearances prior to trial required his formal objection. *Estate of Harvey* (1964) 224 Cal.App.2d 555 [36 Cal.Rptr. 788], the only case cited by the surety, is inapplicable. There, no objection was raised until the appeal.

[5] Section 48, effective as of January 1, 1985, provides, in pertinent part: "(a) Subject to subdivision (b), 'interested person' includes any of the following: [¶] (1) An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding. . . . [¶] (b) The meaning of 'interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding."

[6] Code of Civil Procedure section 387 provides, in part: "(a) Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. . . . [¶] (b) If any provision of law confers an unconditional right to intervene or if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless the person's interest is

wish to participate, is controlling and the trial court erred in relying on section 48. He argues the surety would have been unable to meet the statutory intervention requirements and would therefore have had no legal way to involve itself in the action.[7]

Norberg is correct that the Code of Civil Procedure governs unless the Probate Code otherwise provides. (Former § 1233.)[8] In other words, unless the Probate Code specifically provides for an alternative to intervention, the mandates of the Code of Civil Procedure are controlling. Section 48 does provide an alternative to intervention; thus, the Code of Civil Procedure is inapplicable.

There is a reason for the different procedures which a nonparty must follow if wishing to participate in probate matters as compared to other civil litigation. A nonparty seeking to intervene in civil matters is required to bring a motion alleging certain requirements have been met. A prospective intervener must demonstrate both adequate interest in the litigation's outcome and inadequate representation of its interest by either party. (Code Civ. Proc., § 387, subds. (a) & (b).)[9] If the court determines the petitioner satisfies both requirements, it must permit intervention. These statutory limitations on who may intervene exist to permit the original parties, to the greatest extent possible, to conduct their own lawsuit on their own terms. (*People* ex rel. *Rominger* v. *County of Trinity* (1983) 147 Cal.App.3d 655, 661 [195 Cal.Rptr. 186].)[10]

---

adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene."

[7] Norberg contends because the surety failed to allege inadequate representation of its interest, it could not have qualified to intervene. The surety made no such claim, however. Nor did it seek to intervene. Rather, it wanted to participate as an interested person, for which a claim of inadequate representation is not required.

[8] Former section 1233 has been replaced by section 1000, operative July 1, 1989, which provides: "Except to the extent that this code provides applicable rules, the rules of practice applicable to civil actions apply to, and constitute the rules of practice in, proceedings under this code."

[9] *Continental Vinyl Products Corp.* v. *Mead Corp.* (1972) 27 Cal.App.3d 543 [103 Cal.Rptr. 806] provides a comprehensive discussion of interests which do and do not qualify a party to intervene.

[10] Norberg relies on *Anchor Casualty Co.* v. *Strube* (1963) 221 Cal.App.2d 29 [34 Cal.Rptr. 295] to support his position the surety has *no* right to intervene. That case is distinguishable, however. Because the proceeding was a nonprobate matter, it did not involve the special characteristics of probate matters.

Further, without citation to any authority, the opinion states, "[A] surety on a judicial bond [even in a nonprobate civil case] does not control the litigation and has no right or duty to intervene therein." (*Id.*, at p. 33.) This is an inaccurate and oversimplified statement of the law, for even in nonprobate civil cases a surety may intervene when the statutory requirements are satisfied. And ability to control the litigation is not a requirement. As explained above, the intervener need only show that its interest in the litigation is not being adequately represented. (Code Civ. Proc., § 387.)

The purpose of the interested person provision, as developed under California case law, differs from civil intervention in that "[t]he administration of a decedent's estate involves a series of separate proceedings, each of which is intended to be final [citation], not only as to the parties who appear therein, but also as to all persons 'interested in the estate' whose rights may be affected, although they did not appear therein. In fact, it is undoubtedly because all such persons were to be bound by various orders and decrees entered in the course of administration of the estate that *the Legislature expressly provided that they might appear and protect their rights* in the proceedings which lead to such orders and decrees. [Citations]." (*Estate of Loring* (1946) 29 Cal.2d 423, 428 [175 P.2d 524], italics added.)

A review of the legislative history of section 48 indicates the statute merely codifies the policy articulated in *Loring.* While section 48 indicates *who* may be an interested person, it does not explain *how* a party *becomes* an interested person beyond merely appearing at a proceeding. Once the party appears, the judge determines whether to permit participation by that party as an interested person.

Subdivision (a) of section 48 does not purport to provide an exclusive list of recognizable interests. Rather, it permits the court to designate as an interested person anyone having an interest in an estate which may be affected by a probate proceeding. Subdivision (b) allows the court to determine the sufficiency of that party's interest for the purposes of each proceeding conducted. Thus, a party may qualify as an interested person entitled to participate for purposes of one proceeding but not for another.

Accordingly, section 48 gives the trial court more flexibility in controlling probate proceedings than does Code of Civil Procedure section 387. A party permitted to participate as an interested person under the latter might not have been permitted to intervene in a probate proceeding. At the same time, the trial court may limit a party's participation.[11]

Further, a party may desire to participate in only one specific probate proceeding; section 48 makes it easier for that party to do so. This is exactly what the surety wanted, and the trial court correctly ruled section 48 governed the surety's request.

---

[11] Broader participation in those same proceedings by the same party could result if the court permitted general intervention based on a determination of inadequate representation of the party's interest. (Code Civ. Proc., § 387, subd. (b).) The surety's interest, however, is a narrow one, i.e., avoiding payment on the administrator's bond. Surety intervention in proceedings other than for surcharge would likely be improper.

### III.

■ Norberg maintains even if section 48 is controlling, the trial court nonetheless erred in finding the surety was an interested person. He reminds us that because a surety is not liable until there has been a determination of the administrator's liability, he could not have joined the surety as a party. (*Estate of Dwyer* (1959) 168 Cal.App.2d 264, 268 [335 P.2d 718].) Norberg further contends, because the surety cannot be joined as a party, it cannot participate as an interested person.

True, a surety cannot be made a party to a surcharge action, but it is nevertheless bound by the court's order. (*Maloney* v. *Mass. Bonding & Ins. Co.* (1942) 20 Cal.2d 1, 6 [123 P.2d 449]; Code Civ. Proc., §§ 996.460, subd. (c), 996.470.) And if an enforcement action is brought, the surety may not relitigate the amount of the surcharge. Thus, even though he was precluded from joining the surety, Norberg was assured the surety would be conclusively responsible.

Norberg's contention the surety was entitled only to notice is also unpersuasive. Notice of the proceeding would be of little value if all the surety could do is passively observe. The purpose of notice is to provide an interested person an opportunity to protect its interest *by participating*. (*Estate of Loring, supra*, 29 Cal.2d at p. 428.) "It would be an anomaly in the law to hold that a surety is conclusively bound by a decree surcharging its principal [citation], and on the other hand, it is not entitled to participate in the very proceeding giving rise to the surcharge and the measure of its liability." (*Estate of Harvey, supra*, 224 Cal.App.2d at p. 561.)

Here, the trial court found that because the surety would be required to pay on the bond if Marilyn were held liable, it was in the surety's interest to make certain Marilyn's side of the case was adequately represented. This interest was sufficient to qualify the surety as an interested person. Thus, the trial court was correct in permitting the surety to participate.

### IV.

Upon Norberg's request for a statement of decision, the probate court directed Marilyn's counsel to prepare a proposed statement. Norberg objected to paragraph 14, which stated, in pertinent part: "The Probate Code provides two alternative methods for Court authority to run a business: [section] 572 and [section] 591.[12] The Administrator herein had authority

---

[12] Sections 572, 591 and 591.6 were repealed by Statutes 1987, chapter 923, section 35, effective July 1, 1988.

Section 572 has been replaced by section 9760, subdivisions (c) & (d). Section 591 is restated in section 10400. Section 591.6 has been replaced by sections 10514, 10515, 10519, 10531, 10535, 10538, 10552, 10553, 10556, 10560 and 10562.

under [section] 592 [*sic*], the Independent Administration of Estates Act [IAEA]. This authority did not excuse the Administrator's conduct. The Administrator was held to the duty of care found in the *Estate of Beach* [(1975) 15 Cal.3d 623 (125 Cal.Rptr. 570, 542 P.2d 994)]. . . ."

The court sustained Norberg's objection, incorporating his proposed language into the statement of decision. The court found section 591.6 "excuse[d] the administrator from personal liability she would otherwise [have] incur[red] for any losses in operating a business of the estate without obtaining authority to do so under Probate Code Section 527 [*sic*]."

■ ■ ■ ■ Norberg claims this finding was in error because it improperly excused Marilyn from liability.[13] A review of the record reveals Marilyn's version more closely reflected the court's reasoning; however, there is nothing erroneous, as a matter of law, about the statement of decision.

■ Norberg maintains Marilyn should have obtained section 572[14] authority to run the business even though she was authorized pursuant to section 591.6.[15] We disagree.

---

[13]The surety claims Norberg cannot now raise this issue because he "invited" the error. The surety is wrong. Under the doctrine of invited error, a party "cannot challenge a defective finding . . . which he [or she] proposed. [Citations.]" (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 302, pp. 314-315.) But that rule is inapplicable here.

To overcome the presumption of the correctness of the trial court's orders, Norberg needed to make sure the record adequately reflected whatever error he believed the trial court made. (Eisenberg, Horvitz & Weiner, Cal. Practice Guide: Civil Appeals and Writs (Rutter 1989) § 8:20, p. 8-4.) He proposed language he believed accurately represented the court's reasoning on an issue found in Marilyn's favor. In light of his task on appeal, he took the proper action. As Norberg points out, "[t]o adopt [the surety's] invited error argument in this case would mean that whenever an attorney is requested to propose a Statement of Decision for a court, he [or she] [had] better not include anything that the court found against him [or her]."

Neither case cited by the surety is apt here. In *Johnson* v. *Rich* (1957) 150 Cal.App.2d 740 [310 P.2d 980], the party assigned to draft findings reflecting a *judgment in her favor* then appealed from those findings. And in *Smith* v. *Royal Mfg. Co.* (1960) 185 Cal.App.2d 315 [8 Cal.Rptr. 417], appellant complained the findings were *hastily* prepared by his former attorneys; however, the court refused to grant relief on that basis.

[14]Former section 572 provides, in pertinent part: "After notice to all persons interested in an estate, given in such manner as may be directed by the court or a judge thereof, the court may authorize the executor or administrator: (a) to continue the operation of the decedent's business . . . to such an extent and subject to such restrictions as the court may determine to be for the best interests of the estate and those interested therein . . . ."

[15]Former section 591.6 provides, in pertinent part: "Unless restricted by the will, an executor or administrator who has been granted authority to administer the estate without court supervision shall have all of the following powers . . . . [¶] (*l*) To continue the operation of

Section 572 requires closer court supervision than section 591.6 for substantially the same estate administration activities.[16] As long as section 591 administration is properly applied for and the requisite notice is given, the administrator may seek, and the Probate Court may grant, estate administration authority pursuant to that code section alone.

This construction of sections 572 and 591.6 is well supported. First, "[a]n interpretation which gives effect is preferred to one which makes void." (Civ. Code, § 3541.) In its minute order granting Marilyn independent administration authority the court specifically granted her authority under section 591.6 to run the business. To have ruled she must also have obtained authority under section 572 would render section 591.6 meaningless.

Second, "[i]nterpretation must be reasonable." (Civ. Code, § 3542.) The purpose of the IAEA was to alleviate an overburdened system and to allow independent administration. It would be unreasonable to interpret the Probate Code to require an administrator to obtain section 572 approval for actions permitted under section 591.6.

Finally, specific provisions govern over general provisions relating to the same subject, although the general standing alone covers the specific. (*Newland* v. *Kizer* (1989) 209 Cal.App.3d 647, 654 [257 Cal.Rptr. 450]; Code Civ. Proc., § 1859.) Section 591.6 contains specific provisions pertaining to personal representatives who have independent authority under the IAEA; section 572 contains general provisions which cover all personal representatives. Thus, section 591.6 governs over section 572.

Relying on *Lobro* v. *Watson* (1974) 42 Cal.App.3d 180, 189 [116 Cal.Rptr. 533], Norberg maintains the administrator is still the fiduciary of the estate. He is correct. Nothing within the act even remotely suggests an IAEA administrator does not have the same fiduciary duties as an administrator under any other Probate Code section. The same fiduciary standards apply under both section 591.6 and section 572. The issue is therefore whether the court imposed the correct standard of care in evaluating Marilyn's performance of her responsibilities as a fiduciary. We do not decide whether she had a lesser duty under section 591.6 or whether she was excused under section 591.6 from some duty she would have owed under section 572.

---

the decedent's business to such extent as he or she shall deem to be for the best interest of the estate and those interested therein."

[16] "The IAEA was enacted in response to public criticism of the probate process as requiring too much court involvement and attorney time, and being too complex and costly [citation]. By enabling IAEA representatives to administer decedents' estates with a minimum of court supervision, the Act both expedites estate administration and reduces the time and expense involved." (Ross & Moore, Cal. Practice Guide: Probate (Rutter 1989) § 9:1, p. 9-1.)

Had Marilyn failed to obtain court authorization under either section 591.6 section *or* 572, she could have been held *strictly liable* for losses due to her operation of Hedberg or her handling of other estate funds. (*Estate of Maddalena* (1940) 42 Cal.App.2d 12, 18 [108 P.2d 17].) The only protection from liability articulated by paragraph 14, therefore, is that Marilyn is not strictly liable for losses due to her operation of Hedberg; she is instead held to the objective reasonable person standard of care defined in *Estate of Beach, supra*, 15 Cal.3d at p. 639.[17] In its minute order of March 20, 1987, incorporated into paragraph 1 of its statement of decision, the court applied the *Beach* standard, finding the various estate losses were not caused by Marilyn's breach of that legal duty of care.[18] The court properly refused to impose the requested surcharge.

The judgment is affirmed. Respondent Highlands Insurance Company to receive costs on appeal.

Wallin, Acting P. J., and Moore, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 27, 1990.

---

[17] The holding in *Beach* is now codified in section 9600.

[18] Norberg claims the trial court erred in failing to give res judicata effect to the federal district court's findings. The findings are res judicata (*Fitzgerald* v. *Herzer* (1947) 78 Cal.App.2d 127, 131-132 [177 P.2d 364]); however, the trial court did not commit prejudicial error.

The trial court made a finding, in conflict with a federal court finding, that Marilyn did not breach the distributorship contract. The trial court's finding, however, was irrelevant to its conclusion that Marilyn did not breach her fiduciary duty. (*Mitchell* v. *Jones* (1959) 172 Cal.App.2d 580, 586-587 [342 P.2d 503, 77 A.L.R.2d 1404].) The statement of decision indicates "[n]o conduct violating her standard of care was found to be the cause of such losses. Evidence was entered that external forces beyond the administrator's control caused such losses."