Filed 11/14/13  Estate of Richardson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| Estate of JOHN RICHARDSON, Deceased. | |
| | D062276 |
| DONNA TOBEY, | |
| Petitioner and Respondent, | (Super. Ct. No. P182652) |
| v. | |
| DIANE STRETTON, | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Julia C. Kelety, Judge.  Affirmed.

Diane Stretton, in pro. per., for Objector and Appellant.

The Krupa Law Group and Lori L. Krupa for Petitioner and Respondent.

Diane Stretton appeals from a probate court order denying her motion to disqualify a probate court judge (Code Civ. Proc., § 170.6), and rejecting her objections to a status report on the administration of her father's estate.[1]  We affirm.

SUMMARY OF RELEVANT FACTS AND PROCEDURE

*Background*

John Richardson (Father) died more than 11 years ago.  At the time of his death, he was involved in divorce proceedings with his wife (Mother) after they had been married for about 56 years.  Mother died in 2003.  Because this appeal concerns only Father's estate, we omit references to Mother and her estate except where relevant to the issues before us.

Father and Mother left three adult daughters:  Stretton, Donna Tobey, and Sharon Freeburn.  In his will, Father named Tobey as executor, identified Tobey and Freeburn as the sole beneficiaries, and specifically and expressly omitted Stretton as a beneficiary.  Before his death, Father had revoked a trust that had designated Stretton as a beneficiary.  Although Stretton challenged the will and trust revocation, Stretton was unsuccessful in those challenges.  Thereafter, Stretton had no legal basis to seek any benefits under Father's estate or trust.

Six years after Father's death, in February 2006, Stretton was declared a vexatious litigant based, in part, on her numerous unsuccessful filings in Mother's and Father's

---

[1]    Statutory references are to the Code of Civil Procedure unless otherwise specified.

2

estate proceedings. Stretton was required to obtain permission from the superior court presiding judge before filing new litigation in the probate proceedings.

One focus of Stretton's prior unsuccessful litigation efforts was a deed of trust held by Father and Mother encumbering Stretton's real property in Lake Forest, California, referred to as the "Sleepy Hollow" property. The deed of trust on the Sleepy Hollow property secured a loan of approximately $256,000 from Father and Mother to Stretton. In prior proceedings, Stretton claimed the deed of trust was invalid for numerous reasons, including that there was no underlying promissory note and the deed of trust was merely a vehicle to ensure Stretton's former husband did not obtain rights to the property. However, in a 2006 final judgment resolving a claim brought by Stretton against Father's and Mother's estates, the court (Judge Lisa Guy-Schall) rejected these arguments, and made an express finding that the parents' deed of trust on the Sleepy Hollow property was valid and reflected security for unpaid loans from Father and Mother to Stretton.

Thereafter, the probate court confirmed that the Sleepy Hollow property should be sold. Based on an appeal filed by Stretton relating to Father's trust revocation, the probate court initially issued an order staying the sale. However, the probate court ultimately lifted this stay after it determined the sale was unrelated to Stretton's challenge to the trust revocation. Before this sale order was executed, in March 2010, the Orange County tax assessor's office held a nonjudicial foreclosure sale of the Sleepy Hollow property (based on a failure to pay owed taxes) and sold the property at an auction for approximately $382,800.

3

*Motion at Issue in this Appeal*

In August 2011, executor Tobey filed a second report on the status of the estate administration and a request for orders continuing the administration and for certain distributions and fees for the executor and her attorney (August 2011 petition). Tobey and her attorney filed supporting declarations and memoranda discussing the status of the estate. In these papers, Tobey noted that Father's estate is insolvent and the estate owes her money for amounts she personally paid for fees charged to the estate. Tobey also indicated that neither she nor her attorney has been paid for their services. Tobey additionally discussed the financial burden to the estate from Stretton's litigation and from malpractice by a prior estate attorney.

With respect to the Sleepy Hollow property, Tobey informed the court of the nonjudicial foreclosure sale and that she has a pending claim in Orange County for the estate's share of the net sales proceeds. Tobey stated that Stretton had filed a lawsuit contesting the foreclosure sale in Orange County, but the lawsuit was dismissed. In a supplement filed two months later, Stretton stated that a payment from the "County of Orange in the amount of $173,323.65 was received in early September and is on deposit [with Tobey's counsel's law firm]."

In response to Tobey's August 2011 petition, Stretton moved to disqualify Judge Julia Kelety, who had recently been assigned to preside over Father's estate.[2] (§ 170.6.)

---

[2] During the previous 10 years, numerous superior court judges had ruled on various aspects of the probate and estate litigation, including Judge Lisa Guy-Schall, Judge Thomas LaVoy, Judge Linda Quinn, and Judge Gerald Jessop.

4

Stretton also filed an objection to the "appraisal" relating to the Sleepy Hollow property, essentially challenging the fact that the Sleepy Hollow property was included in Father's estate. In support, Stretton raised numerous arguments, including that Father's deed of trust on the property was void and Father's estate was collaterally estopped from claiming an interest in the Sleepy Hollow property based on a family court order involving the dissolution between Mother and Father.

On December 6, 2011, Judge Kelety held a hearing at which Stretton and Tobey's counsel appeared. Later that day, the court issued an order denying Stretton's disqualification motion, finding that Stretton had no standing to bring the motion. The court stated: "By its terms, only a party may bring a 170.6 motion. Ms. Stretton, however, has been adjudged not to have any standing with respect to the administration of this Estate. . . . These rulings are the law of the case in this matter. Ms. Stretton, as obligor on a Deed of Trust owned by the Estate, is at best a debtor of the estate. She lacks standing to challenge the estate's administration and is therefore not a party to these proceedings." The court also issued a minute order approving Tobey's status report and preliminary distribution requests. In this ruling, the court did not specifically address or refer to the Sleepy Hollow property, but the court stated that Tobey was authorized to use any additional funds received by the estate to pay herself for amounts owed to her by the estate.

On appeal, Stretton challenges these December 6, 2011 rulings.

5

DISCUSSION

I. *Disqualification Motion*

Stretton contends the court erred in denying her section 170.6 peremptory challenge.[3]

Section 170.6 prohibits a judicial officer from acting in "a civil or criminal action or special proceeding" if a statutory affidavit of prejudice is filed by "[a] party to, or an attorney appearing in, [the] action or proceeding . . . ."  (§ 170.6, subd. (a)(1), (2).)  Under this code section, only a "party" to the proceeding or the party's attorney may file a section 170.6 challenge.  (§ 170.6, subd. (a)(2); *Avelar v. Superior Court* (1992) 7 Cal.App.4th 1270, 1274.)

In estate proceedings, whether an individual is a party depends on whether he or she is an "interested person" with respect to the particular proceeding.  (*Estate of Davis* (1990) 219 Cal.App.3d 663, 668.)  Probate Code section 48, subdivision (a)(1) identifies various parties who may qualify as an "interested person," but limits these definitions to an individual having a property right in, or claim against, an estate that may be affected by the probate proceeding.  (*Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 728; see Ross & Cohen, Cal. Practice Guide:  Probate (The Rutter Group 2013) ¶ 3:84.1, p. 3-32.)

---

[3]    Generally, a writ petition is the exclusive means for obtaining review of an unsuccessful peremptory challenge.  (§ 170.3, subd. (d).)  However, we consider this claim on appeal because Stretton filed an application under the vexatious litigant statute seeking to file a writ petition, but the acting presiding justice denied the application.  Because our examination of the record shows the lower court did not treat the disqualification petition as subject to the vexatious litigant prefiling requirement, we shall review the orders denying the disqualification petition on its merits.

6

Under this statutory definition, an heir is not an "interested party" if a court has previously determined the heir is not a beneficiary under the estate documents. (See *Lickter, supra*, at pp. 732-733; *Estate of Powers* (1979) 91 Cal.App.3d 715, 719-722.)

The probate court did not err in concluding Stretton was not a party to the proceeding on Tobey's August 2011 petition. Although Stretton was an "heir at law," she had been expressly disinherited under Father's will. Thus, Stretton was not a beneficiary who had standing to object to a status report or a preliminary distribution request. (See Prob. Code, §§ 48, subd. (a), 11600, 11602.) The court properly denied Stretton's section 170.6 disqualification petition on the ground that Stretton was not an interested party in the proceedings.

Stretton argues that she was an interested party because she was a former owner of the Sleepy Hollow property and was challenging the estate's claim to this property. However, the issue of the ownership of the property was not before the court on Tobey's August 2011 petition. Tobey's August 2011 petition did not request the court to make any order pertaining to that claim, and sought only an order for distribution of those funds after they had been paid to the estate by a governmental agency. Because Stretton was not a beneficiary or creditor of Father's estate, she had no interest in the manner in which the funds were distributed once they were paid to the estate.

Additionally, the issue of Tobey's right to enforce the deed of trust had already been adjudicated in prior probate proceedings. In 2006, the superior court issued a final judgment stating that Father's deed of trust on the Sleepy Hollow property was valid and enforceable. Thereafter, the probate court ordered the Sleepy Hollow property sold and,

7

in an unrelated action, the property was sold in a nonjudicial foreclosure sale held by Orange County for an unpaid tax lien. A party has no standing to object to a petition seeking preliminary distributions for the purpose of relitigating issues that were already decided by final orders. (See *Estate of Gump* (1940) 16 Cal.2d 535, 549.)

We also reject Stretton's contention that Tobey waived her right to object to Stretton's participation in the proceedings because Stretton had previously participated in probate hearings involving Father's estate. The fact that Stretton may have been an interested party in prior proceedings when she had a direct interest in the outcome (for example, where she claimed that Father had not revoked his earlier trust) does not mean she had a continuing interest. (See Prob. Code, § 48, subd. (b) ["meaning of 'interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding"]; *Estate of Davis, supra,* 219 Cal.App.3d at p. 668 ["a party may qualify as an interested person entitled to participate for purposes of one proceeding but not for another"]; see also *Arman v. Bank of America* (1999) 74 Cal.App.4th 697, 702-703.) By the time of Tobey's August 2011 petition, it had been finally determined that Stretton was not a beneficiary under any estate document and had no standing as a creditor under any possible theory.

## II. *Stretton's Challenges to the Nonjudicial Foreclosure Sale and to the Deed of Trust*

Stretton also contends the court erred in "[f]ailing and refusing to hear [her] objections to the appraisal of the TD [referring to the Sleepy Hollow deed of trust] ***before*** distributing the proceeds of the TD . . . ." This contention is without merit. First, as

8

discussed above, Stretton had no standing to object to the appraisal of the property or the distribution of funds from the sale because she was not a beneficiary or creditor of the estate. (Prob. Code, § 48, subd. (a).)

In her appellate briefs, Stretton argues that her constitutional rights were violated because she was deprived of her Sleepy Hollow property without due process. The record does not support this claim.

In February 2006, the superior court entered a judgment in a lawsuit brought by Stretton against Father's estate and others. One of the issues in the lawsuit was the validity of the parents' deed of trust on the Sleepy Hollow property and whether that deed of trust was security for loans totaling approximately $253,875. In a tentative statement of decision, the court stated that the "defense . . . provided detailed accountings, clear documentation, clear recollections, and uncontroverted evidence that loans totaling $253,975 were in fact given to . . . Stretton [by her parents] . . . . [Additionally], the evidence is overwhelming that the deed of trust on Sleepy Hollow was validly prepared, signed and filed as a reflection of those past loans. There is no evidence to suggest that any fraud was ever perpetrated by any parties in the preparation and the filing of said deed of trust, and therefore this Court finds it to be valid." The final judgment in the action, filed February 1, 2006, states: "[T]he deed of trust secured by the Sleepy Hollow residence . . . is valid and enforceable."

Despite this final judgment, Stretton continued to raise the same challenges to the Sleepy Hollow deed of trust at various other proceedings, including in opposition to

9

Tobey's petitions to sell the Sleepy Hollow property and to lift the stay on the sale. Each of these challenges has been rejected by the court.

Stretton was not denied her constitutional rights. Stretton had the prior opportunity to fully litigate the issues regarding her ownership of the Sleepy Hollow property and whether the deed of trust in favor of Father and Mother was valid and enforceable.

Stretton argues that a prior order in her parents' dissolution proceedings required the parties to seek an "equitable mortgage before claiming any interest in Stretton's real property." However, any such family court order was preempted by the probate court's later orders. Moreover, as we have stated, the validity of the nonjudicial foreclosure sale was not before the probate court on Tobey's August 2011 petition. Tobey did not trigger that sale; instead the sale was conducted by Orange County on an unpaid tax lien.

Stretton contends she did not have notice of the proceeding regarding Tobey's August 2011 petition. However, as a nonparty to the proceedings, she was not entitled to notice. In any event, the record supports that Stretton did have actual notice because she filed extensive opposition papers and she appeared at the hearing.

In her reply brief, Stretton raises various claims regarding certain real property located in Riverside County. However, she did not raise these issues in opposition to Tobey's petition below and therefore the issues are not properly before us. Moreover, as with the Sleepy Hollow property, Stretton is not an interested party entitled to raise objections to the court's distribution of the Riverside property.

10

Stretton raises numerous additional contentions in her appellate briefs. We have considered each point and found that none of these arguments shows the court erred in its December 6 rulings.[4]

## DISPOSITION

Affirmed. Appellant to pay respondent's costs on appeal.

HALLER, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.

---

[4] Both parties request that we take judicial notice of various documents. We deny Stretton's request except for Exhibits G and M, attached to her judicial notice request. Exhibits G and M are copies of filed court orders, and thus are proper matters for judicial notice. (Evid. Code, § 452, subd. (d)(2).) The remaining documents do not fall within a recognized exception and/or are not relevant to the appellate issues. We grant Tobey's request with respect to Exhibits 1, 2, 3, and 5 attached to her judicial notice request because these exhibits are copies of filed court orders, and thus are proper matters for judicial notice. (*Ibid.*) We deny Tobey's request with respect to Exhibit 4 because this document does not fall within a recognized exception.