Filed 6/18/26  Clapkin v. Levin CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| IRWIN BABBIT CLAPKIN AND SHEILA CLAPKIN GRANTOR TRUST, DATED SEPTEMBER 5, 1990. <br><br>———————————————<br><br> ANDREW B. CLAPKIN et al., <br><br> Plaintiffs and Respondents. <br><br> v. <br><br> SHANA LEVIN et al., <br><br> Objectors and Appellants, | B339469 <br><br> (Los Angeles County Super. Ct. No. 23STPB06674) |

APPEAL from orders of the Superior Court of Los Angeles County, Gus T. May, Judge.  Affirmed.

Greenberg Glusker Fields Claman & Machtinger, Gregg A. Martin and Ann S. Lee; Klapach & Klapach and Joseph

S. Klapach for Objectors and Appellants Shana Levin and Tamara Levin.

Gold & Berkus, Justin B. Gold and Omer A. Khan for Plaintiffs and Respondents Andrew Clapkin, Dina Marshall, Marci Clapkin Weiser, and Karen Callan.

_____

## INTRODUCTION

In this case, one of many between two sets of cousins fighting over control of a family corporation, Andrew Clapkin, Dina Marshall, Marci Clapkin Weiser, and Karen Callan (the Clapkins) filed a petition in the probate court to confirm their status as successor cotrustees of a trust that is the corporation's largest shareholder. The Clapkins' cousins, Shana Levin and Tamara Levin (the Levins), filed objections to the Clapkins' petition. The probate court granted the Clapkins' motion for judgment on the pleadings on the Levins' objections to the Clapkins' petition, ruling the Levins did not have standing to participate in the action. The Levins appeal from the court's orders granting the Clapkins' motion for judgment on the pleadings, overruling and striking the Levins' objections, and granting the Clapkins' petition to confirm their status as successor cotrustees. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Levins and the Clapkins Clash over Control of a Family-run Corporation*

We described much of the factual and procedural background of this litigation in *Clapkin v. Levin* (2026)

2

119 Cal.App.5th 222 (*Clapkin I*). "The Levins and the Clapkins are shareholders in JosLevin Realty Corp. of L.A. (JLR), a closely held, family corporation that owns industrial real estate. In the early 1990s Martin Levin, the Levins' and Clapkins' grandfather, owned all of JLR's shares. Martin gave his shares in equal portions to his three children, Sheila Clapkin, Michael Levin, and Ronald Levin. After Ronald transferred his shares back to Martin, Martin distributed those (i.e., Ronald's) shares equally among Sheila, Michael, and Martin's seven grandchildren: Michael's children (the two Levins) and Sheila's children (the four Clapkins and their sister Sheri Clapkin, the one grandchild not a party to this internecine litigation.) Sheila transferred her shares into a trust that named Sheila and her husband as trustees and their five children as successor cotrustees and beneficiaries." (*Clapkin I*, at p. 226, fn. omitted.)

In February 2022 Michael died and left his shares to his children, Shana and Tamara. That left Sheila's trust as JLR's largest shareholder, with a 37 percent interest, followed by Shana and Tamara (each with 22.2 percent), and the five Clapkin children (each with 3.7 percent). (*Clapkin I, supra,* 119 Cal.App.5th at p. 226.)

The Levins and the Clapkins began to fight over control of JLR. Between June and September 2022 the Levins and the Clapkins filed the first four actions against each other, asserting causes of action (among others) for breach of fiduciary duty and improper corporate actions. (*Clapkin I, supra,* 119 Cal.App.5th at p. 227.)

B.    *The Levins Dispute the Clapkins' Right To Vote the Trust's Shares*

In November 2022 the Clapkins took the position that, because Sheila was incapacitated and her husband had resigned as trustee, under the terms of the trust the Clapkin children became successor cotrustees of Sheila's trust.[1]  The Clapkins "voted 51.8 percent of JLR's shares (the trust's 37 percent, plus their 14.8 percent (3.7 x 4)) to wind up and dissolve JLR.  The Clapkins also filed a petition for judicial supervision and appointment of a receiver (the fifth action between the cousins)." (*Clapkin I, supra,* 119 Cal.App.5th at p. 227.)

The Levins contended the Clapkins were not authorized to vote the trust's shares to dissolve JLR.  They claimed JLR's buy-sell agreement, which limited a shareholder's ability to transfer JLR shares "'other than to the Corporation or to the other Shareholders,'" prohibited Sheila as trustee from transferring her shares to the Clapkin children as successor cotrustees.  The Levins "also argued Sheila's 'purported transfer of the "voting power" connected with' her shares was, under the terms of the buy-sell agreement, 'void and ineffectual' and should 'be deemed to constitute an offer to the remaining shareholders to sell' the shares under the agreement's involuntary transfer provision.  In January 2023 the Levins sent notices of election to purchase the trust's shares under that provision.  [¶]  The Clapkins disputed the Levins' interpretation of the buy-sell

---

[1]    In November 2022 Sheila's physicians declared her incapacitated due to Parkinson's disease dementia.  Sheila's husband resigned as trustee "with respect only to the Trust's interest in" JLR in October 2022 and resigned completely in June 2023.

4

agreement, arguing the agreement permitted 'unlimited transfer of shares to the children of shareholders.'" (*Clapkin I*, *supra*, 119 Cal.App.5th at p. 228.)

At the annual shareholders meeting in February 2023 the Levins refused to count the votes the Clapkins cast as cotrustees of the trust. On February 14, 2023 the Levins filed the sixth action between the parties—a complaint to validate the election of Shana, Tamara, and JLR's bookkeeper as directors. (*Clapkin I*, *supra*, 119 Cal.App.5th at p. 228.)

C.      *The Clapkins File a Petition in Probate Court; The Probate Court Rules the Levins Lack Standing To Object and Grants the Petition*

In May 2023 the trial court presiding over the six pending actions issued an order stating, among other things: "2. The Court finds that the Probate Court has the exclusive jurisdiction under [section 17000, subdivision (a),] to determine the identity of the trustees of the [trust] because that decision involves the internal affairs of the [trust] during the period of November 30, 2022 [the date the Clapkins voted to dissolve JLR] through the present. [¶] 3. The Court orders one or more of the Clapkins . . . to file a Petition with Los Angeles Superior Court Probate Department by June 19, 2023 regarding number 2 above." The trial court stayed the six civil actions among the parties, except for two issues unrelated to the identity of the trustees.

In June 2023 the Clapkins filed a petition in probate court under section 17200 (this action, the eighth),[2] asking the court to rule that the Clapkin children "were Co-Trustees of the Trust as it pertains to the [JLR] shares as of November 6, 2022" and that, "as of June 13, 2023, [the Clapkin children] are Co-Trustees of the Trust for all purposes." In December 2023 the Levins filed objections to the petition, arguing the Clapkin children were not and never had been trustees of the trust.

In January 2024 the Clapkins filed an ex parte application in the probate court to confirm the Clapkin children as successor cotrustees as of June 13, 2023 or to appoint the Clapkin children as interim cotrustees pending resolution of the action. The Levins opposed the ex parte application. The probate court granted the Clapkins' ex parte application, suspended Sheila as trustee, and appointed the Clapkin children as interim successor cotrustees.[3]

---

[2] The seventh action was an interpleader action by JLR's insurer regarding the insurance proceeds for a warehouse that was damaged by fire.

[3] After the probate court ruled the Clapkin children were interim successor cotrustees, the Levins filed an action (the ninth) against the Clapkins seeking, among other things, an order requiring the Clapkins to sell the trust's shares to the Levins under the buy-sell agreement's involuntary purchase provision. The Clapkins filed a cross-complaint, and the Levins filed a special motion to strike portions of the cross-complaint under Code of Civil Procedure section 425.16, which the trial court denied. We affirmed that order. (*Clapkin I*, *supra*, 119 Cal.App.5th at p. 226.)

In April 2024 the Clapkins filed a motion for judgment on the pleadings on the Levins' objections to the Clapkins' petition to confirm they were the successor cotrustees, arguing the Levins did not have standing to object to the petition. In May 2024 the probate court granted the Clapkins' motion without leave to amend, ruling the Levins were not interested parties and declining to "exercise its discretion to deem them interested parties" under Probate Code section 48, subdivision (b).[4] The probate court overruled and struck the Levins' objections to the Clapkins' petition. The court granted the Clapkins' petition, ruling the Clapkin children were successor cotrustees of the trust regarding the JLR shares as of November 6, 2022, and for all purposes as of June 13, 2023 (the day Sheila's husband resigned as trustee). The Levins timely appealed from the probate court's orders.

**DISCUSSION**

A.    *Applicable Law and Standard of Review*

A plaintiff may move for judgment on the pleadings on the ground that "the answer does not state facts sufficient to constitute a defense to the complaint." (Code Civ. Proc., § 438, subd. (c)(1)(A).) "Such motions are 'the equivalent of a demurrer to an answer, and [on review] . . . the appellate court will assume the truth of all facts properly pleaded in the answer and will disregard the controverted allegations of the complaint.'" (*Anaheim Mobile Estates, LLC v. State of California* (2025) 113 Cal.App.5th 602, 610; see *Conservatorship of Anne S.* (2025)

---

[4]    Undesignated statutory references are to the Probate Code.

112 Cal.App.5th 1021, 1027 ["""A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.""""].)

Where, as here, the trial court grants a motion for judgment on the pleadings without leave to amend, we consider "'whether there is a reasonable possibility that the defect can be cured by amendment.'" (*Today's IV, Inc. v. Los Angeles County Metropolitan Transportation Authority* (2022) 83 Cal.App.5th 1137, 1175; see *Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1402.) "The appellant bears the burden of showing abuse of discretion and carries that burden by showing how the [pleading] can be amended." (*Today's IV*, at p. 1176; see *King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1050.)

> B.      *The Probate Court Did Not Err in Ruling the Levins Were Not Interested Persons Under Section 48*

An "interested person" may appear and object at a hearing in a trust proceeding. (§ 1043, subd. (a); see *Colvis v. Binswanger* (2023) 96 Cal.App.5th 393, 395.) Section 48, subdivision (a), defines "interested person" as an "heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." Section 48, subdivision (b), states: "The meaning of 'interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding." "The probate court has flexibility in determining whether to permit a party to participate as an interested party." (*Estate of Sobol* (2014) 225 Cal.App.4th 771, 782; see *Estate of Prindle* (2009) 173 Cal.App.4th 119, 126.)

8

Under section 48 standing "'is a fluid concept dependent on the nature of the proceeding before the trial court and the parties' relationship to the proceeding, as well as to the trust (or estate).'" (*Hamlin v. Jendayi* (2024) 105 Cal.App.5th 1064, 1074.)  We review the probate court's ruling on whether a person has standing under section 48 for abuse of discretion.  (*Colvis*, at p. 399; *Sobol*, at p. 782.)

The Levins do not argue they are heirs, devisees, children, spouses, creditors, or beneficiaries, nor do they argue they have a property right in or claim against trust assets.  (See § 48, subd. (a).)  Instead, they argue JLR or the Levins "as directors and shareholders" of JLR are interested persons because "they may be financially impacted by the petition."  The Levins' claimed potential financial impacts are (1) if the probate court rules the Clapkin children were the successor cotrustees in November 2022, the Clapkins had the authority to vote the trust's shares to dissolve JLR; (2) if JLR is dissolved, it will "be forced to sell off its unique and valuable real property"; and (3) "the Levins may lose their valuable 44% interest in a profitable real estate company that was founded by their grandfather."

Though a party who "could be financially affected by the probate proceedings" may be an interested person under section 48 (*Conservatorship of Anne S.*, *supra*, 112 Cal.App.5th at p. 1028; see *Estate of Prindle*, *supra*, 173 Cal.App.4th at p. 127), the financial impact of the probate court proceeding must be considerably more direct than the potential impact the Levins assert they will experience.  For example, in *Estate of Prindle*, on which the Levins rely, a creditor filed a claim against an estate for a $7 million negligence judgment.  (*Prindle*, at p. 124.)  The

9

administrator of the estate assigned to the creditor the estate's rights against the decedent's liability insurer for failing to defend and indemnify the administrator in the negligence action. (*Id.* at pp. 123-124.) The administrator and the creditor sued the insurer for bad faith, exposing the insurer to liability for the $7 million judgment. (*Id.* at p. 124.) The insurer filed a petition in the probate action to determine the creditor's claim was invalid as untimely. (*Ibid.*) The probate court ruled the insurer was an interested person under section 48 because, if the late claim were allowed, the insurer could be liable for $7 million and, even if the claim were not allowed, the insurer could be liable for the policy limit of $100,000. (*Id.* at p. 126.) "'In either event,'" the probate court found, the insurer "'would be financially impacted, thereby falling within the definition of an interested party.'" (*Ibid.*) The court in *Prindle* affirmed, holding the probate court did not abuse its discretion in ruling the insurer was an interested person under section 48. (*Prindle*, at p. 127.) Similarly, in *Estate of Davis* (1990) 219 Cal.App.3d 663, another case the Levins cite, the court held a probate administrator's surety was an interested person under section 48 because the surety would have to pay on a bond if the estate administrator was found liable in a surcharge action. (*Id.* at p. 669.)

The Levins are not, as they contend, in a position similar to the insurer in *Estate of Prindle*, *supra*, 173 Cal.App.4th 119 or the surety in *Estate of Davis*, *supra*, 219 Cal.App.3d 663. The proceedings in *Prindle* and *Davis* required the probate court to determine a specific financial obligation of the estate, and the interested persons (the insurers) faced potential liability for that financial obligation. In contrast, the Clapkins' petition asked the probate court to confirm the identity of the trustees, not to

10

adjudicate a liability for which the Levins could be liable. That the probate court's ruling might result in the dissolution of JLR is too attenuated a financial interest to make the Levins interested persons under section 48. (Cf. *Hamlin v. Jendayi*, *supra*, 105 Cal.App.5th at p. 1075 [potential intestate heirs could contest a trust because they "had an actual and concrete interest in [the decedent's] estate and in invalidating the Trust that purported to disinherit them"]; *Estate of Maniscalco* (1992) 9 Cal.App.4th 520, 522-524 [under section 48, subdivision (b), a city could move to vacate a probate court order confirming the sale of real property, where the city intended to appear and overbid, but counsel for the administrator gave the city the wrong date of the hearing].)

Next, the Levins argue they are interested persons under section 48 because their rights in the director election action (which the Levins filed to validate their election of directors at the February 2023 shareholder meeting) are "'interrelated with the probate proceeding." The Levins rely on *Estate of Eimers* (2020) 49 Cal.App.5th 97. The issue in that case was whether a holographic will validly exercised a power of appointment where the will did not, as a family trust required, specifically refer to the power of appointment. (*Id.* at pp. 101-102.) The probate court found the holographic will did not exercise the power of appointment and instructed the trustee not to distribute the decedent's shares in the trust to the beneficiaries. (*Id.* at p. 102.) The beneficiaries filed a petition in another county to reform the will to include the power of appointment, and the trustee filed a demurrer. (*Id.* at pp. 102-103.) The court in *Eimers* rejected the beneficiaries' argument the trustee lacked standing under section 48 to file the demurrer. (*Emiers*, at p. 107.) The court

11

concluded that the trustee had a fiduciary duty to administer the family trust by appearing in the probate action and that the trustee was the only person with a duty to advocate for the trustor's wishes. (*Ibid.*) The "peculiar interrelated procedural posture of the probate estate vis-à-vis the trust" compelled the court to conclude the "trustee has standing to file his demurrer." (*Ibid.*)

The Levins argue that, as in *Estate of Eimers*, *supra*, 49 Cal.App.5th 97, this action and the director election action are interrelated because the trial court in the director election action "ordered the Levins to litigate their voting claim to dispute the Clapkins' right to vote the Trust's shares for directors" in the probate court. But that's not what happened. As discussed, the trial court ordered the Clapkins to file a petition in the probate court "to determine the identity of the trustees" of the trust. The trial court did not order the Levins to litigate their voting claim or to do anything else in the probate court.

The Levins also argue that "the Corporations Code confers standing on the Levins to object to the Petition" and that, by "finding the Levins lack standing, the Probate Court deprived the Levins of their statutory right to challenge the validity of the Clapkins' vote." Relying on Corporations Code section 709, subdivision (a), which authorizes a shareholder to file an action to "determine the validity" of any election, the Levins argue they "had a statutory right, and thus standing, to challenge the interpretation of the Trust as part of their claim to determine the Clapkins had no right to vote the Trust's shares." The Clapkins do not, however, cite any authority for the proposition the Corporations Code confers standing in a probate court action.

The Levins also rely on *Morrical v. Rogers* (2013) 220 Cal.App.4th 438.  In that case a minority shareholder in a family business filed an action under Corporations Code section 709 challenging the election of directors.  (*Morrical*, at p. 442.)  The issue in *Morrical* was "whether an action brought under [Corporations Code] section 709, which allows the court to determine the validity of an election of corporate directors, may be based on an alleged breach of fiduciary duty or more specifically a violation of [Corporations Code] section 310, which governs corporate transactions with companies in which one or more corporate directors have a material financial interest." (*Morrical*, at p. 442.)  The court held a Corporations Code section 709 action could be based on allegations of breach of fiduciary duty.  (*Morrical*, at p. 460.)

*Morrical v. Rogers*, *supra*, 220 Cal.App.4th 438 does not support the Levins' contention they may "challenge the interpretation of" the trust.  The court in *Morrical* addressed the scope of an action under Corporations Code section 709, not whether a party was an interested person under section 48 in a probate court proceeding.  The Levins try to analogize *Morrical*, where the minority shareholder challenged a voting agreement between the other shareholders, to this case, where the Levins seek to challenge a trust agreement in probate court, but Corporations Code section 709 (the statute at issue in *Morrical*) expressly authorizes the court to "determine the validity, effectiveness and construction of voting agreements."  (See Corp. Code, § 709, subd. (c).)  Neither *Morrical* nor Corporations Code

13

section 709 has any bearing on whether a party is an interested person under section 48.[5]

The Levins next rely on *Edwards v. Edwards* (1998) 61 Cal.App.4th 599, but that case does not support their position either. The issue in *Edwards* was whether the cotrustees' power to vote shares of stock held in trust was governed by section 15620, which requires unanimous action by cotrustees, or by Corporations Code section 704, which allows a majority vote by two or more fiduciaries. (*Edwards*, at p. 601.) The court in *Edwards* held that, where the trust instrument did not specify how the cotrustees should vote shares of stock held in trust, the more specific provision (Corporations Code section 704) prevailed over the general rule (section 15620). (*Edwards*, at pp. 601-603.) *Edwards* does not, as the Levins suggest, support their contention "the Corporations Code may confer rights, such as standing, in matters of trust administration."

Finally, the Levins argue they "will be severely prejudiced" if they cannot participate in the probate court action because the probate court's ruling adjudicated their claim in the director election action and their defense in the dissolution action that the Clapkins did not have authority to vote the trust's shares. The Levins argue the "Clapkins should not be able to prevail on the Levins' defenses and claims by default simply because the tribunal that will determine the Trust issues [is] the Probate Court rather than the Civil Court."

The probate court, however, did not adjudicate any of the Levins' claims or defenses in the civil actions; it ruled only the

---

[5]     Though the Levins may not litigate their rights under Corporations Code section 709 in the probate court, they may do so in the director election action in superior court.

14

Clapkin children were successor cotrustees.  The probate court had exclusive jurisdiction to determine the identity of the trustees.  (See § 17000, subd. (a) [probate court "has exclusive jurisdiction of proceedings concerning the internal affairs of trusts"]; *Soria v. Soria* (2010) 185 Cal.App.4th 780, 786 [same].)  Even if the probate court's ruling undermined or negatively affected the Levins' position in other litigation, the Levins were not entitled to participate in the probate proceeding unless they were interested persons under section 48.  The probate court did not abuse its discretion in ruling they were not.

### C.  *The Probate Court Did Not Abuse Its Discretion in Denying the Levins Leave To Amend*

The Levins argue the probate court erred in denying them leave to amend.  The Levins argue they could have amended their objections to allege judicial or equitable estoppel.[6]

""'Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.  The doctrine serves a clear purpose: to protect the integrity of the judicial process.'"" (*People v. Adir Internat., LLC* (2025) 114 Cal.App.5th 275, 307; see *People v. Castillo* (2010) 49 Cal.4th 145, 155.)  "The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was

---

[6]  Though the Levins did not argue in the probate court they could allege judicial or equitable estoppel, they may show for the first time on appeal how they can amend their pleading.  (See *Starlight Cinemas, Inc. v. Massachusetts Bay Ins. Co.* (2023) 91 Cal.App.5th 24, 32.)

successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'" (*Adir Internat.*, at p. 307; see *Castillo*, at p. 155.)

""""The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.'"" (*Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032, 1072; see *Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1261.)

The Levins assert "the Clapkins admitted in their Petition that [the trial court] ordered the parties to litigate [a] potentially dispositive issue in the Dissolution and Director Election actions in the probate court, but moved to preclude the Levins from doing so by claiming their rights and interests would not be affected by the Petition." The Levins argue those "inconsistent positions estop the Clapkins from claiming the Levins lack standing to object to the Petition."

The Levins have not shown they can amend to allege judicial or equitable estoppel. As discussed, the trial court did not order the parties to litigate in the probate court; it ordered the Clapkins to file a petition in the probate court to determine

16

who the trustees of the trust are.  The trial court did not order the Levins to participate in that proceeding or rule they had standing to do so.  Thus, the Levins have not shown that the Clapkins took inconsistent positions or that they intentionally misled the court or the Levins.  Because the Levins have not shown there is a reasonable possibility they can amend their objections to the Clapkins' petition, the probate court did not abuse its discretion in granting the Clapkins' motion for judgment on the pleadings without leave to amend.  (See *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100.)

## DISPOSITION

The probate court's orders granting the Clapkins' motion for judgment on the pleadings without leave to amend and granting the Clapkins' petition to confirm their status as successor cotrustees are affirmed.  The Clapkins' request for sanctions is denied.  The Clapkins are to recover their costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.          STONE, J.

17